UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT ELROY BLOOD, | ) | Case No. 5:16cv2011 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Robert Elroy Blood ( "Blood" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ( "Commissioner"), denying his applications for Disability Insurance Benefits and a Period of Disability under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

I. PROCEDURAL HISTORY

On July 13, 2012, Blood applied for Disability Insurance Benefits ("DIB") and a Period of Disability. (R. 11, PageID #: 93, 160, 177.) Blood stated that he became unable to work because of his disabling condition on September 6, 2012. (R. 11, PageID #: 93, 160, 181.) His

applications were denied initially and upon reconsideration. (R. 11, PageID #: 115-122, 123-132.) Thereafter, Blood filed a written request for a hearing before an administrative law judge ("ALJ"). (R. 11, PageID #: 148-149.)

The ALJ convened a hearing on December 11, 2014, to hear Blood's case. (R. 11, PageID #: 103-114.) Blood appeared at the hearing, without counsel, and testified. (R. 11, PageID #: 105-106.)  On February 13, 2015, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Blood was disabled. (R. 11, PageID #: 93-99; *see generally* 20 C.F.R. § 404.1520(a).) Based on his review, the ALJ concluded Blood was not disabled. (R. 11, PageID #: 93, 99.)

The Appeals Council denied Blood's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 11, PageID #: 70-72.) Blood now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

II. PERSONAL BACKGROUND INFORMATION

Blood was born on July 6, 1949, and was 62 years old as of his alleged disability onset date. (R. 11, PageID #: 160, 177.) Blood has a high school GED, and is able to communicate in English. (R. 11, PageID #: 182, 180.) Blood had past relevant work as service advisor. (R. 11, PageID #: 99.)

III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Blood's brief alleging errors by the ALJ. Blood applied for disability benefits on July 13, 2012. (R. 11, PageID #: 93, 160, 177.) Blood listed his physical or mental conditions that limit his ability to work as "Lower back, impingement left shoulder, torn rotator cuff right shoulder, hbp, spot in lungs, nodule in left breast." (R. 11, PageID #: 181.)

On January 10, 2011, Joanne L. Marino, ARNP (a nurse practitioner[2]), at the VA provided a summary of Blood's health conditions. (R. 11, PageID #: 323-324.) Blood had been diagnosed with bilateral spondylolysis L5-S1 with radiculopathy. Marino noted that as a mechanic, Blood had increased pain with twisting and turning, and that squatting and standing would be difficult. Marino stated that the effect on occupational activities would be decreased mobility and pain. *Id.* at 323. Marino noted that Blood had an accident while on active duty, with resulting lower back complaints and eventual discharge for a back condition. *Id.* at 324.

Krishna Vara, M.D., provided a medical source statement. (R. 11, PageID #:  334-338.) Dr. Vara examined Blood on October 22, 2012, for an assessment regarding chronic back pain. Blood complained of chronic back pain and chronic shoulder pain for the past few years. Dr. Vara reviewed an October 27, 2011, shoulder x-ray that showed degenerative joint disease ("DJD"), as well as a February 17, 2011, x-ray of the lumbar spine that showed moderate degenerative disc disease ("DDD") at L5-S1. Blood did not require any assistance in activities of

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

[2]  At the time of the ALJ's decision, Marino as a nurse practitioner was not "an acceptable medical source." 20 C.F.R. § 404.1513(a).

daily living. *Id.* at 334. Blood's range of motion was within normal limits, except for slightly reduced lumbar spine extension and lateral flexion. *Id.* at 335-336. Mild tenderness was noted in both shoulders. Blood had normal handgrip and full motor strength in both his arms and legs. *Id.* at 335. Dr. Vara noted that Blood complained of chronic back pain, and bilateral shoulder pain, but "no other significant objective findings noted and therefore no functional limitations are commended at this time." (R. 11, PageID #: 335.)

State agency physician, Debra Troiano, M.D., completed a Physical RFC Assessment on January 25, 2013. (R. 11, PageID #: 129-131.) Dr. Troiano determined that Blood could frequently lift or carry ten pounds, and occasionally lift or carry twenty pounds; could stand, walk, or sit for about six hours of an eight-hour workday; and, was unlimited in his ability to push or pull (other than as shown for lift or carry). *Id.* at 129. Dr. Troiano opined that Blood could occasionally climb ramps or stairs, and could occasionally crouch, but those activities should be limited to one-third of a workday. The doctor stated that scaffolds should be avoided. *Id.* at 130. Dr. Troiano imposed no manipulative, visual, or communicative limitations, but stated that Blood should avoid concentrated exposure to humidity, extreme cold, or workplace hazards (machinery, heights), although she provided no explanation or supporting evidence for those limitations. (R. 11, PageID #: 130-131.)

VA staff physician D. Michael Jervis, D.O., performed an in-person Compensation and Pension ("C&P") examination on March 18, 2014. (R. 11, PageID #: 530-536.) Blood reported an increase in his service-connected left leg radiculopathy, with mild to moderate pain. *Id.* at 531-532. Dr. Jervis indicated a normal gait. *Id.* at 534. Dr. Jervis completed a "severity evaluation" for nerves in the legs, and all nerves effected, including the sciatic, were normal. *Id.*

4

at 534-535. Dr. Jervis indicated that Blood's peripheral nerve conditions or neuropathy did not impact his ability to work. *Id.* at 536.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his February 13, 2015, decision:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since September 6, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: lumbar degenerative disc disease and bilateral shoulder degenerative joint disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).
>
> 6. The claimant is capable of performing past relevant work as a service advisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from September 6, 2012, through the date of this decision (20 CFR 404.1520(f)).

(R. 11, PageID #: 95, 96, 99.)

## V. DISABILITY STANDARD

A claimant is entitled to receive disability insurance benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant

5

is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Comm'r Soc. Sec. Admin.*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r Soc. Sec. Admin.*, 378 F.3d 541, 548 (6th Cir. 2004).

VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r Soc. Sec. Admin.*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" is more

6

than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.* 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Blood briefs several issues for review:

1. The ALJ failed to provide substantial support for his RFC determination.

2. The ALJ erred in determining that Plaintiff can return to his past relevant work.

3. The ALJ failed to obtain testimony from a qualified vocational expert.

4. The ALJ improperly discounted Plaintiff's VA disability determination.

5. The ALJ failed to include the Plaintiff's osteoarthritis of the hip as a severe impairment.

(R. 12, PageID #: 1015.) The court will address Blood's assignments of error in a different order than he presents them, to more closely track the five-step analysis utilized by the ALJ.

## A. Vocational Expert

A vocational expert did not testify at Blood's hearing. Blood contends that a vocational expert was necessary "to evaluate whether the full range of light work with no environmental restrictions and Plaintiff's past work as a service advisor could accommodate [his back and shoulder] impairments." (R. 12, PageID #: 1022.) In support, Blood cites he agency's Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-5-50 and SSR 00-4p. *Id.* Blood contends "the ALJ appears to have relied" instead on an "Assessment of Vocational Factors," prepared by Lauren Welch, a disability adjudicator. *Id.*

The agency's HALLEX provides that an ALJ "may need to obtain a VE's opinion . . . when the ALJ is determining whether the claimant's impairment(s) prevents the performance of past relevant work." HALLEX I-2-5-50(A), 1994 WL 637380 (emphasis added). On the other hand, HALLEX directs that an ALJ "must" obtain a VE's opinion only[3] when directed by the Appeals Council or a court. HALLEX I-2-5-50(B). HALLEX, in addition, is an agency procedural manual that is not binding on the courts. *See, e.g.*, *Bowie v. Comm'r Soc. Sec. Admin.*, 539 F.3d 395, 399 (6th Cir. 2008).

Social Security Ruling ("SSR") 00-4p notes that, pursuant to 20 CFR §§ 404.1566(d) and 416.966(d), the agency takes administrative notice of "reliable job information" available from various publications, including the *Dictionary of Occupational Titles* ("DOT"). SSR 00-4p, 2000 WL 1898704, at *2. The SSR states that, in making disability determinations, the

---

[3] HALLEX also states that a VE's opinion must be sought in the case of an Acquiescence Ruling, citing two instances, irrelevant here, from the Third and Eighth Circuits.

agency relies primarily on the DOT for information about the requirements of work in the national economy, at steps 4 and 5 of the sequential process. *Id.* The ALJ "may also use VEs . . . at these steps to resolve complex vocational issues." *Id.*

> Concerning the use of vocational experts, the regulations provide:
>
> If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.

20 C.F.R. § 404.1566(e). It is clear from the regulations that the use of a vocational expert, although undeniably common, is a discretionary decision for the ALJ, in a situation involving consideration of whether the claimant can use his skills in "other work," or a similarly complex issue. *Id.* Here, the ALJ found that Blood could perform PRW, thus a consideration of "other work" was unnecessary.

As the Commissioner points out (R. 13, PageID #: 1038), although Welch's vocational assessment is part of the record (R. 11, PageID #: 131-132), there is no indication that ALJ relied on that assessment as a vocational opinion. *See generally* R. 11, PageID #: 99. The Commissioner points out that Welch had found that Blood could perform his work as a service advisor as actually performed. (R. 11, PageID #: 132.) The ALJ did not adopt that finding, and determined that Blood is able to perform the service advisor job as generally performed. (R. 11, PageID #: 99.)

The ALJ conducted a thorough review of the relevant medical records, diagnostic tests, activities of daily living, and physical assessments in reaching the RFC to perform a full range of light work. (R. 11, PageID #: 96-98.) The ALJ then determined that Blood was capable of performing his past relevant work as a service advisor, referring to the DOT description at

9

620.261-018, as light level exertion. (R. 11, PageID #: 99.) Comparing claimant's RFC with the physical and mental demands of the position, the ALJ determined that Blood "is able to perform the service advisor job as generally performed because [Blood] can perform the full range of light work." *Id.* The RFC finding was consistent with the requirement of light work for the service advisor position.

The ALJ did not commit error under HALLEX I-2-5-50 or SSR 00-4p regarding Blood's RFC and ability to perform PRW. The ALJ was not required to obtain the assistance of a VE, but exercised appropriate discretion relying on the DOT and on the underlying record to support the determinations. The court finds that the ALJ's decision is supported by substantial evidence.

### B. Osteoarthritis of the Hip

Blood alleges error in the ALJ's determination that his osteoarthritis of the hip is not a severe impairment. (R. 12, PageID #: 1023-1024.) Blood points to x-rays that he states confirmed osteoarthritic changes in the weight-bearing aspect of both hips, which explained symptoms of bilateral hip pain and his antalgic gait. (R. 12, PageID #: 1024, citing R. 11, PageID #: 750, 335.) Blood argues these symptoms would greatly restrict his ability to do basic work activities, such as walking and other physical movement. *Id.* Blood contends that this condition satisfies the threshold requirement for severe impairment, and the ALJ failed to consider its functional impact. *Id.*

Blood did not include osteoarthritis of the hip among the conditions that limit his ability to work, in his disability application. (R. 11, PageID #: 181.) The ALJ noted that the record established that Blood has hip arthritis, but the report (also cited by Blood, above) by Dr. Vara showed that his hip range of motion bilaterally was within normal limits. (R. 11, PageID #: 96,

citing R. 11, PageID #: 335.) Although Blood cites this same October 2012 report as evidence of bilateral hip pain, the report states he had complained of chronic back pain and bilateral shoulder pain, but "no other significant objective findings noted and therefore no functional limitations are commended at this time." (R. 11, PageID #: 335.) While Dr. Vara observed an antalgic gait in 2012, the ALJ points to a more recent March 2014 examination by Dr. Jervis that indicated a normal gait. (R. 11, PageID #: 96, citing *id.* at 534.) In addition, the report on the 2014 x-ray (also cited by Blood) characterizes his bilateral osteoarthritis of the hips as "mild." (R. 11, PageID #: 750; *see id.* at 96.) The ALJ reasonably found that the record does not indicate Blood's hip arthritis significantly limits his ability to perform basic work activities, thus the ALJ found it is nonsevere. (R. 11, PageID #: 96.) The decision of the ALJ regarding the severity of Blood's hip osteoarthritis is supported by substantial evidence.

### C. VA Disability Determination

Blood argues that the ALJ did not fulfill his duty to carefully weigh the VA's disability determination. (R. 12, PageID #: 1023.) He asserts that, while a determination by another agency that he is disabled in not binding on the SSA, evidence of such a disability determination "cannot be ignored and must be considered." (R. 12, PageID #: 1023, quoting SSR 06-03p, 2006 WL 2329939, at *6 (citing 20 CFR § 404.1504).)

> SSR 06-03p provides guidance to ALJs in this regard, providing that ALJs
>
> . . . are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental . . . agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered.

SSR 06-03p, 2006 WL 2329939, at *6. The disability determination by the VA is, however, only one factor to be considered in making a social security disability finding. *Ritchie v. Comm'r Soc. Sec. Admin.*, No. 12-2405, 2013 WL 5496007, at *2 (6th Cir. Oct. 4, 2013) Moreover, the VA's standards differ from those employed by the SSA and "VA decisions are not binding on the determination of whether an individual is disabled for purposes of social security disability." *Shumaker v. Comm'r Soc. Sec. Admin.*, No. 1:11CV2801, 2013 WL 441060, at *14 (N.D. Ohio Jan. 15, 2013), *adopted by* 2013 WL 441011 (N.D. Ohio Feb. 4, 2013). *See also Graley v. Colvin*, No. 1:14CV728, 2015 WL 3935953, at *2 (N.D. Ohio June 26, 2015), *aff'd*, No. 15-3907, 2016 WL 1598603 (6th Cir. Apr. 21, 2016) (VA determination not binding); 20 CFR § 404.1504.

The Sixth Circuit has held that a disability determination from the VA is entitled to consideration, but has not specified a required weight to assign such VA decisions. *Ritchie*, 2013 WL 5496007, at *1; *Graley*, 2015 WL 3935953, at *2. SSR 06-03p simply provides that evidence of a disability decision by another agency "must be considered." SSR 06-03p, 2006 WL 2329939, at *6. Some federal courts have required an ALJ to give reasons for discounting VA disability determinations, although this is not specifically required by the regulations. *Shumaker*, 2013 WL 441060, at *14-*15 (discussing cases).

Here, the ALJ assigned "little weight" to the VA's 20% disability rating. (R. 11, PageID #: 98.) The ALJ indicated that the VA's percentile disability ratings do not correspond to how the SSA assesses disability, and consequently assigned "little weight" to the VA's disability rating. *Id.* Although Blood contends that the evidence supporting the VA's determination may have provided insight into his impairments, he does not discuss that evidence, nor direct the court to any supporting evidence in the record, beyond asserting that he has a 20% disability

12

rating from the VA. (R. 12, PageID #: 1023.) The ALJ considered the VA's determination, but assigned it little weight, for the reasons stated. *See generally Graley*, 2015 WL 3935953, at *2 (indicating an ALJ could give VA's 100% disability rating little weight). The ALJ's decision regarding the weight of VA's determination is supported by substantial evidence.

### D. ALJ's RFC Assessment

Blood contends that the ALJ's RFC assessment that he can perform a full range of light work is not based on substantial evidence. (R. 12, PageID #: 1019-1021.) Blood states that the regulatory definition of light work includes lifting no more than twenty pounds at a time, with frequent lifting or carrying of ten pounds, and "a good deal of walking or standing," or sitting with some pushing or pulling of arm or leg controls. (R. 12, PageID #: 1020, citing 20 C.F.R. § 404.1567 and SSR 83-10.) He contends that the record clearly shows he is unable to perform these activities, because his shoulder and back conditions result in pain that is exacerbated by running, walking, and lifting. *Id.* Blood also contends that the ALJ erred in determining that he could return to his past relevant work. *Id.* at 1021.

Blood notes that the ALJ determined that his bilateral shoulder DJD is a severe impairment which, by definition, significantly limits his ability to do basic work activities. (R. 12, PageID #: 1020, *citing Farris v. Sec'y, HHS*, 773 F.2d 85, 90 n.2 (6th Cir. 1985)). Blood argues that, although the ALJ found his shoulder impairment was severe, the ALJ failed to incorporate any arm limitations in his RFC assessment. *Id.* Blood also claims that the ALJ's conclusion that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible disregards Blood's consistent descriptions of his back and shoulder pain throughout the record. *Id.* at 1020-1021.

13

At Step Two of the disability analysis, "the claimant must show that he suffers from a severe medically determinable physical or mental impairment." *Wilson*, 378 F.3d at 548. The Sixth Circuit views the Step Two severity evaluation "as a *de minimi*s hurdle in the disability determination process." *Childrey v. Chater*, 91 F.3d 143, 1996 WL 420265, at *1 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also Pendley v. Sec'y of HHS*, 875 F.2d 866 , 1989 WL 40142, at *2 (6th Cir. 1989) (TABLE, text in WESTLAW) (per curiam). It is to be used as "an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Childrey*, 1996 WL 420265, at *1 (quoting *Higgs*, 880 F.2d at 863).

The "severity" requirement is not intended to be overly stringent; otherwise, it would preclude "administrative determination of the crucial statutory question: whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience." *Pendley v. Sec'y of HHS*, 875 F.2d 866, 1989 WL 40142, at *2 (6th Cir. 1989) (TABLE, text in WESTLAW) (per curiam) (quoting *Farris v. Sec'y, HHS*, 773 F.2d 85, 89-90 (6th Cir. 1985).) In other words, determining that a claimant has a severe impairment that significantly limits his ability to do basic work activities does not necessarily preclude the possibility of the claimant's ability to perform SGA.

The claimant has the burden to present medical evidence showing he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). It is claimant's burden to demonstrate that his impairments prevent him from performing substantial gainful activity. *Walters*, 127 F.3d at 529 (claimant bears burden of proof during first four steps). An ALJ may determine that a claimant is not disabled when he can still perform the duties of a past relevant job. *Stephens v. Shalala*, 50 F.3d 538, 542 (8th Cir. 1995) (citing cases); *Taylor v. Comm'r Soc. Sec. Admin.*, No. 11-13896, 2012

14

WL 6725901, at *6 (E.D. Mich. Nov. 13, 2012), *adopted by* 2012 WL 6726328 (E.D. Mich. Dec. 27, 2012).

The ALJ found that Blood has severe impairments, specifically, lumbar degenerative disc disease and bilateral shoulder degenerative joint disease. (R. 11, PageID #: 95.) Blood contends that the ALJ should have adopted the RFC assessment provided by state agency reviewing physician, Dr. Troiano. (R. 12, PageID #: 1020.) Blood argues that Dr. Troiano opined that he could only climb ramps/stairs occasionally, never climb ladders/ropes/scaffolds, crouch occasionally, and provided environmental limitations, and that such limitations should have been adopted by the ALJ. (R. 12, PageID #: 1020, citing R. 11, PageID #: 129-130.)

Dr. Troiano determined that Blood could frequently lift or carry ten pounds, and occasionally lift or carry twenty pounds; and could stand, walk, or sit for about six hours of an eight-hour workday (R. 11, PageID #: 129), which is consistent with an RFC of light work. *See* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5-*6. Notably, Dr. Troiano did not suggest any limitations in reaching or any other manipulative limitations. (R. 11, PageID #: 129-130.) The ALJ gave significant weight to this opinion. (R. 11, PageID #: 98.)

In addition, although the ALJ assessed an RFC to perform the full range of light work, he specifically determined that Blood was capable of performing his past relevant work as a service advisor, as generally performed. The DOT provides that environmental conditions such as exposure to humidity or extreme cold are not present for a service advisor position. DOT, 620.261-018 (4th ed. 1991), 1991 WL 685245. Further, the DOT states that climbing is an activity that does not exist for this position and crouching is only done occasionally. *Id*. *See generally* R. 11, PageID #: 130 (crouch occasionally). Thus, as the ALJ stated, the PRW in the service advisor position does not require the performance of work-related activities precluded by

15

the RFC (or, for that matter, by Dr. Troiano's RFC assessment). (R. 11, PageID #: 99; *see generally id.* at 129-130.)

Other than his discussion of Dr. Troiano's RFC assessment, Blood has not presented medical evidence demonstrating that his impairments caused limitations beyond those the ALJ incorporated into his RFC, nor does he cite medical evidence that the ALJ failed to consider. *See generally* R. 12, PageID #: 1020-1021.

Blood also argues that the ALJ's conclusion that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible disregards Blood's consistent descriptions of his back and shoulder pain throughout the record, as well as his lengthy work history. (R. 12, PageID #: 1020-1021.) The ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Walters*, 127 F.3d at 531; *Gonzalez v. Comm'r Soc. Sec. Admin.*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). The ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record." *Gonzalez*, 2008 WL 584927, at *5.

Here, the ALJ provided a reasonable evidentiary basis for his assessment of Blood's subjective claims. The ALJ stated that Blood's medical records and diagnostic tests were inconsistent with disabling shoulder pain or disabling back pain, and provided examples from the record underlying his determination. (R. 11, PageID #: 97.) A claimant's subjective allegations of pain or other symptoms alone will not establish that he is disabled. 20 C.F.R. § 404.1529(a). As noted above, Dr. Troiano did not suggest any limitations in reaching, or other manipulative limitations. (R. 11, PageID #: 129-130.)

An ALJ may determine that a claimant is not disabled when he can still perform the duties of a past relevant job. *Stephens*, 50 F.3d at 542; *Taylor*, 2012 WL 6725901, at *6. The

decision of the ALJ regarding Blood's RFC, as well as his ability to do his past relevant work, is supported by substantial evidence.

## VIII. RECOMMENDATION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence. The record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the Commissioner's final benefits determination. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401). Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

Date: June 29, 2017

s/*David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).